47 CCPA

**CHICAGO DIETETIC SUPPLY HOUSE, INC.**

v.

**PERKINS PRODUCTS COMPANY** (General Foods Corporation, Assignee, Substituted).

Patent Appeal No. 6543.

United States Court of Customs and Patent Appeals.

June 29, 1960.

Worley, Chief Judge, dissented.

John B. Hosty, Chicago, Ill., for appellant.

Francis C. Browne, Washington, D. C., Frederick F. Mack, White Plains, N. Y. (Gordon R. Brown, White Plains, N. Y., of counsel), for appellee.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Judges, and Judge William H. KIRKPATRICK.[1]

SMITH, Judge.

This is an appeal from the decision of the Assistant Commissioner of Patents, 120 USPQ 91, reversing the decision of the Examiner of Interferences and sustaining the opposition filed under section 13 of the Trademark Act of 1946, 15 U.S.C.A. § 1063, by appellee, to an application, serial No. 699,061, filed November 29, 1955, by appellant to register the name "Cool Sip" under section 2 of said act, 15 U.S.C.A. § 1052, as a trademark for a liquid concentrate and a preparation in powder form for making dietary beverages or soft drinks.

Appellee is the owner of the trademark "Kool-Aid" for "prepared powders * * * for making non-alcoholic beverage in the home" upon which Registration No. 317,955 was issued October 9, 1934, renewed, republished February 15,

1. United States Senior Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge* O'Connell, pursuant to provisions of Section 294(d), Title 28 U.S.C.

1949 under section 12(c) of the Act of 1946, 15 U.S.C.A. § 1062(c), and is now incontestable under section 15 of the Act, 15 U.S.C.A. § 1065. Appellee also owns Registration No. 623,164, issued March 13, 1956 on the trademark "Kool-Aid" for "Powders for making soft drinks."

The issue here presented arises particularly under section 2(d) of the Trademark Act of 1946 and requires us to determine whether appellant's mark "Cool Sip" so resembles appellee's registered mark "Kool-Aid" "as to be likely, when applied to the goods of the applicant, to cause confusion or mistake or to deceive purchasers."

Appellant's use of the mark "Cool Sip" on soft drink powders commenced in 1954, some 27 years after appellee began using its "Kool-Aid" mark on soft drink powders. Appellant's first use of the mark "Cool Sip" on a liquid concentrate was in 1935, a date subsequent to appellee's 1927 use of its mark, "Kool-Aid." Priority is not disputed.

The record is silent as to the extent of sales by appellant under its "Cool Sip" mark and about the amount of advertising, if any, of its products on which the mark is used.

By contrast, the record with respect to appellee's mark establishes that beginning in 1927 appellee has supplied soft drink powders which have been sold in large quantities, and advertised extensively under its mark "Kool-Aid." In the 28 years prior to the filing of appellant's application, appellee's sales of its "Kool-Aid" product totaled more than $135 million. For the three years prior to September 30, 1956, appellee each year sold more than 580 million packages of "Kool-Aid" soft drink powders. In the year 1955 alone such sales totaled more than 760 million packages. Dollar sales in 1953 reached nearly $16 million; in 1954 they exceeded $19 million; in 1955 they totaled almost $25 million; and in 1956 they exceeded $23 million.

Appellee's "Kool-Aid" product is sold nationally and it is available to consumers through, among other outlets, a majority of America's retail grocery stores. In 1955, 96 percent of all retail chain grocery stores in the country handled appellee's product. It also was handled by 97 per cent of large independent grocery stores; by 92 per cent of medium independents; and by 87 per cent of small independents.

Appellee has expended large sums in advertising and promoting sales of its product under its "Kool-Aid" mark by radio, television, newspapers, magazines, comic books, outdoor billboards, and store displays. Advertising expenditures for the year 1956 totaled more than $1.9 million; for 1955, $1.7 million; for 1954, $1.4 million; and for the period of 1953–1956, $5.7 million.

The foregoing summary of the facts of record respecting appellee's large sales and extensive advertising are such as to have made appellee's trademark "Kool-Aid" something of a household word and a distinctive symbol of opposer's goodwill.

Appellee's goods and appellant's goods are both of the same general class of preparations for making soft drinks. As is apparent from the specimen labels of record, the goods of both parties include powdered preparations for use with water in making soft drinks; both of these powders are sold in assorted flavors; and the packages of both recommend using the goods for making frozen suckers.

We agree with the statement of the examiner, "Hence it seems apparent that while the products of the parties may be specifically different in composition, they are nevertheless essentially similar soft drinks products susceptive of similar use; and that as such are of a nature that if marketed under the same or similar marks they might readily be assumed to emanate from a single source."

In determining the issue before us, we consider the respective marks as a whole. When so considered it is our opinion that appellant's mark "Cool Sip" is confusingly similar to appellee's mark "Kool-Aid." The meaning and suggestive connotation of both marks are nearly identical. This fact when coupled

with the similarities of the marks in sound and appearance, necessarily results in evoking the same psychological reactions and mental impressions in the minds of purchasers.

Appellant has argued that while the respective marks have the terms "Cool" and "Kool," which admittedly look and sound alike, these terms are descriptive terms of little or no trademark significance and, as such, are so modified by the distinctive suffixes "Sip" and "Aid" that purchaser confusion is not likely.

"Cool" and "Kool" are precisely the same in meaning and suggestion; they are identical in sound; and the slightly variant spelling of the two words does not serve to distinguish them. The words are not deemed to be descriptive of the goods sold, i. e., packaged powders for making soft drinks.

The second syllables of the marks, "Sip" and "Aid," are commonplace words that suggest the nature of the goods but are not features which are used alone to distinguish the goods of the parties. The marks are used in their entireties. When so used, "Cool Sip" suggests a cool beverage. The suggestive significance of "Kool-Aid" is the same.

The goods appellant offers under its "Cool Sip" mark are, as already noted, not only preparations for use in making soft drinks, as are appellee's "Kool-Aid" goods, but they are in part sold in a form indistinguishable from appellee's goods, i. e., as multi-flavored powders packaged in envelopes for use with water in making soft drinks.

Soft drink preparations are inexpensive products and are thus of that class of goods in which trademarks receive little or no painstaking scrutiny by purchasers. Appellee's advertising has featured its trademark "Kool-Aid" and has included comic books, and radio and television programs. While such advertising admittedly reaches adult purchasers, much of it appears to be aimed at creating the purchaser's demand at the child level. In this connection, it strikes us as more than a mere coincidence that the goods of both parties are recommended for making "frozen suckers," a commodity particularly in demand by children.

It is our opinion that the purchasers of the goods of the parties are not likely to distinguish between "Kool-Aid" and "Cool Sip" when used on substantially the same goods. The fact that appellant's goods are designed for sale through dietetic stores is not controlling. There is nothing to prevent it from changing its sales program nor from embarking on the same types of comic book, radio and television advertising as appellee has done.

Our consideration of the facts supports the conclusion that appellant's use of "Cool Sip" on its goods will be likely to cause purchaser confusion, mistake and deceit.

Another likely source of purchaser confusion, mistake and deceit has been adequately considered by the Assistant Commissioner, whose opinion on this point we quote with approval as follows:

" * * * it seems to me that the fact that the products are likely to be sold in different sections of the same stores enhances the probability of confusion, because it is believed that persons familiar with opposer's powdered beverage base widely sold under its well-known trademark 'Kool-Aid' are likely, upon seeing applicant's 'Cool Sip' powdered beverage base in dietetic stores or dietetic sections of departments of food stores, to associate the product with opposer's and to assume that it is a dietetic product being put out by opposer. * * *"

One who enters a field in competition with another must do so fairly and should select as his trademark a mark which will distinguish his goods from the goods of the other. As this court had occasion to comment in Weco Products Company v. Milton Ray Company, 143 F.2d 985, 31 CCPA 1214, at page 1216, 987,

" * * * there is no such poverty in the English language or paucity

**158**

of signs, symbols, numerals, etc., as to justify one who really wishes to distinguish his product from those of all others in entering the twilight zone of a field already appropriated by another."

For the foregoing reasons we *affirm* the decision of the Assistant Commissioner.

Affirmed.

WORLEY, Chief Judge, dissenting, in which KIRKPATRICK, Judge, joins.

In my opinion the differences in sound, appearance, and meaning of the marks "Cool Sip" and "Kool-Aid," when considered in their entireties, are such that their concurrent use on the instant goods would not be likely to result in confusion, mistake or deception of purchasers within the meaning of Section 2(d) of the Lanham Act.

I would reverse.